IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHANIE CORREA,

        Plaintiff,

v.                                    No. CIV-13-0377 WJ/LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on *Plaintiff's Motion to Reverse or Remand Commissioner's Administrative Decision* *(Doc. 19)* and memorandum brief in support of the motion [*Doc. 20*], both filed October 22, 2013.   On December 23, 2013, Defendant filed a response to the motion [*Doc. 21*], and, on December 31, 2013, Plaintiff filed a reply [*Doc. 22*]. United States District Judge William P. Johnson referred the claims raised in the motion to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 23*].   The Court has reviewed the motion, response, reply, and relevant law.   Additionally, the Court has meticulously reviewed and considered the entire administrative record.   [*Doc. 10*].

---

[1] **Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition.   A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.   Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

For the reasons set forth below, the Court recommends that ***Plaintiff's Motion to Reverse or Remand Commissioner's Administrative Decision*** *(Doc. 19)* be **GRANTED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED**.

## I.   Procedural History

On May 27, 2010, Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB"), alleging that she became disabled on September 1, 2008.   [*Doc. 10-7* at 2]. Plaintiff stated that she became disabled due to: cervical spine impairment; lumbar spine impairment; ankylosing spondylitis;[2] numbness, swelling and pain in hands and legs; and fatigue. [*Doc. 10-8* at 4].   The application was denied at the initial level on August 5, 2010 (*Doc. 10-5* at 4-7) and at the reconsideration level on October 1, 2010 (*id.* at 8-10).   Pursuant to Plaintiff's request (*id.* at 11), Administrative Law Judge Mary E. Johnson (hereinafter "ALJ") conducted a video hearing on July 29, 2011 (*Doc. 10-3* at 28-46) and (*id.* at 17).   At the hearing, Plaintiff was represented by counsel and testified.   *Id.* at 30 and 32-41.   Vocational Expert (hereinafter "VE"), Cornelius J. Ford, was also present and testified.   *Id.* at 41-46.[3]

On September 20, 2011, the ALJ issued her decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled.   *Id.* at 17-25.   On September 30, 2011, Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 13), and, on February 20, 2013, the Appeals Council denied Plaintiff's request for review (*id.*

---

[2] "Ankylosing spondylitis" is defined as "arthritis of the spine, resembling rheumatoid arthritis, that may progress to bony ankylosis with lipping of vertebral margins," and "ankylosis" is defined as "[s]tiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint."   Stedman's Medical Dictionary (27th ed., Lippincott Williams & Wilkins 2000) at 1678 and 90.

[3] While the VE is referred to as "Mr. Thor" in the hearing transcript, the ALJ's decision states that his name is Cornelius J. Ford.   *Id.* at 17.

at 2-6), which made the ALJ's decision the final decision of the Commissioner.   On April 23, 2013, Plaintiff filed her complaint in this case.   [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).   If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.   *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).   Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.   *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).   An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."   *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).   While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything

that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084  (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a).   In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.   20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).   At the first four steps of the SEP, the claimant has the burden to show that:  (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."   20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work

4

in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on June 1, 1972.  [*Doc. 10-7* at 2].   Plaintiff has worked as a medical insurance billing clerk and medical secretary.  [*Doc. 10-8* at 5].   Plaintiff alleges that she is unable to work because of "cervical spine impairment;" "lumbar spine impairment;" "ankylosing spondylitis;" "left and right hand and leg numbness/swelling and pain;" and "fatigue."   *Id.* at 4. Plaintiff's records document medical treatment and records from: Southwest Bone & Joint Institute; Cassie Health Center for Women; Desert Springs Physical Therapy; Arthritis and Osteoporosis Associates of New Mexico; Arthur Snyder, M.D.; S.E.D. Medical Laboratories; Brian Robinson, M.D.; Gila Regional Laboratory; Gail Stamler, CNM; Sun View Imaging Services; Vittal T. Pai, M.D.; Sierra Dermatology; Neurology Associates of Mesilla Valley, PC; and Atta Rehman, M.D. (*Docs. 10-9, 10-10,* and *10-11*).   Plaintiff's medical records also include: a Physical Residual Functional Capacity Assessment by Allen Gelinas, M.D., dated August 4, 2010 (*Doc. 10-11* at 2-9); a Case Analysis by Eileen M. Brady, M.D., dated September 30, 2010 (*id.* at 14); and a Spinal Impairment Questionnaire by Gilbert Arizaga, dated November 3, 2010 (*id.* at 16-19 and 44-50).   Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2008, the alleged onset date.   [*Doc. 10-3* at 19].

5

At step two, the ALJ found that Plaintiff has the following severe impairments: "ankylosing spondylitis (inflammatory spondylopathy), lumbago, cervicalgia, osteoarthritis of the hands, osteoporosis, carpal tunnel syndrome." *Id.*   At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). *Id.*

Before step four, the ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations: Plaintiff "can do frequent, but not constant, grasping, gripping, handling, fingering, and feeling;" Plaintiff "must avoid exposure to vibrations, temperature extremes, and moisture;" Plaintiff "must avoid climbing, balancing, and unprotected heights;" and Plaintiff "retains the ability for occasional bending, stooping, and crouching." *Id.* at 20.   In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." *Id.* at 21.   The ALJ found that Plaintiff's description of her daily activities "are not limited to the extent one would expect, given [Plaintiff's] complaints of disabling symptoms and limitations." *Id.* at 22.   The ALJ further found that Plaintiff's daily activities "are not consistent, and they are not consistent with the medical evidence." *Id.*   The ALJ noted that Dr. Gilbert Arizaga was also Plaintiff's employer, and that his statement that Plaintiff "has all bad days and basically cannot do anything" is not supported by clinical signs or findings, so the ALJ gave his

opinion limited weight.  *Id.*  The ALJ considered the state agency medical examiners' opinions but found that Plaintiff's abilities are more limited than their opinions indicated.  *Id.*  At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a medical secretary and billing clerk because the physical and mental demands of those jobs are not precluded by Plaintiff's RFC.  *Id.* at 22-23.   The ALJ found that Plaintiff is able to perform those jobs "as generally performed, as also testified by the [VE]."  *Id.* at 23.   The ALJ further found that, although Plaintiff is capable of performing her past relevant work, there are other jobs in the national economy she is capable of performing, so the ALJ proceeded to the fifth step to make alternative findings.  *Id.*

At the fifth step, the ALJ noted that Plaintiff was born on June 1, 1972 and was 36 years old at the time of her alleged disability onset date, which is defined as a younger individual.  *Id.*  The ALJ further noted that Plaintiff has at least a high school education and is able to communicate in English.  *Id.*  The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can also perform."  *Id.*  The ALJ stated that she asked the VE if any jobs exist in the national economy which could be performed by an individual with the same age, education, past relevant work experience, and RFC as Plaintiff, and the VE testified that the representative occupations such an individual could perform include: security system surveillance monitor, final assembler (optical industry), and telephone information clerk.  *Id.* at 23-24.   The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational

Titles." *Id.* at 24.   The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act.   *Id.*

# V.   Analysis

Plaintiff contends that the ALJ erred by: (1) failing to follow the treating physician rule (*Doc. 20* at 12-15), and (2) failing to properly assess Plaintiff's credibility (*id.* at 15-18).   Plaintiff asks the Court to reverse and remand her case "solely for calculation and awarding of benefits," or, in the alternative, for a new hearing.   *Id.* at 18.   Defendant disputes Plaintiff's contentions and argues that the ALJ properly considered the medical evidence and Plaintiff's credibility, and that the ALJ did not err in relying on the VE's testimony.   [*Doc. 21* at 5-12].

## A.   The ALJ's Consideration of Plaintiff's Treating Physician's Opinions

Plaintiff first contends that the ALJ failed to properly consider the opinions of Plaintiff's treating physician, Dr. Arizaga.   [*Doc. 20* at 12-15].   Plaintiff states that Dr. Arizaga stated that his opinions were based on clinical evidence regarding Plaintiff's "limited range of motion with cervical and lumbar flexion, tenderness of the cervical and lumbar spine, muscle spasms in the cervical and lumbar spine, tingling of the hands, muscle weakness, an abnormal gait, swelling of the joints, and crepitus." *Id.* at 13 (citing *Doc. 10-11* at 44-45).   Plaintiff states that Dr. Arizaga also stated that his opinions were based on "laboratory testing that showed an elevated rheumatoid factor and elevated sedimentation rate." *Id.* (citing *Doc. 10-11* at 46).   Plaintiff contends that these findings are consistent with those reported by the treating specialists, Drs. Snyder and Robinson and are uncontradicted by other substantial evidence in the record.   *Id.* at 13-14. Plaintiff contends that, for these reasons, Dr. Arizaga's opinions should have been given

controlling weight or, if not given controlling weight, they should have been weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.   *Id.* at 14-15.

Defendant, however, contends that the ALJ did not err in his consideration of Dr. Arizaga's opinions because he properly discussed his reasons for discounting Dr. Arizaga's opinion. [*Doc. 21* at 5].   Defendant states that "[t]he record suggests that Dr. Arizaga's Spinal Impairment Questionnaire did not appear to be the product of an examination, thereby undermining its reliability."   *Id.* at 6 (citing *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2002)).   Defendant also states that the record only contains two documents from Dr. Arizaga and does not contain his treatment records.   *Id.*   Defendant further contends that Dr. Arizaga did not support his opinion with appropriate medical findings but, instead, he "simply checked off these findings on the questionnaire without any objective medical evidence to support them.   *Id.* at 7.   Defendant states that Dr. Arizaga's opinions are not supported by the opinion of Atta Rehman, M.D., a board certified neurologist, and that Dr. Arizaga's opinions are inconsistent with the opinions of Drs. Snyder and Robinson.   *Id.* at 7-9.

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."   *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir.2007).   First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record."   *Pisciotta*, 500 F.3d at 1077 (citations omitted).   If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight."   If,

however, the treating physician's opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight."  *Id.*  When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length of treatment and frequency of examination, and the nature and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization in the medical field upon which an opinion is given; and other factors tending to support or contradict the opinion.  *See* 20 C.F.R. § 404.1527(c).   Although the "ALJ must evaluate every medical opinion in the record [recognizing that] the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citations and internal quotation marks omitted).

Dr. Arizaga opined that Plaintiff can: sit, stand or walk no more than one hour in an eight-hour workday; would have to get up and move around every half hour; lift up to 10 pounds occasionally; and possibly carry up to 10 pounds occasionally.[4]  [*Doc. 10-11* at 47-48].  Dr. Arizaga found that Plaintiff's pain would frequently interfere with her attention and concentration, and that Plaintiff is likely to absent from work more than three times a month as a

---

[4] The Court notes that Dr. Arizaga's findings regarding Plaintiff's ability to carry is unclear because he marks both "never" and "occasionally" with an arrow from occasionally to never for 0-5 pounds and 5-10 pounds. [*Doc. 10-11* at 48].

10

result of her impairments or treatment.   *Id.* at 48-49.   Dr. Arizaga also found that Plaintiff should

avoid wetness, fumes, gases, temperature extremes, humidity, and dust, and that she should not

engage in pushing, pulling, kneeling, bending, or stooping.   *Id.* at 50.   In her decision, the ALJ

noted that Dr. Arizaga was also Plaintiff's employer, and that Dr. Arizaga stated that Plaintiff "has

all bad days and basically cannot do anything," but that "there are no clinical signs and findings to

support such an extreme amount of limitations."   [*Doc. 10-3* at 22] (citing *Doc. 10-11* at 31-32

and 43-50).   The ALJ stated that "[s]uch devastating limitations require a firm foundation in the

record and that is not present in this case," so the ALJ gave Dr. Arizaga's opinion only limited

weight.   *Id.*

The Court finds that the ALJ failed to provide "reasons that are sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight," because the ALJ failed to discuss why

Dr. Arizaga's opinions were inconsistent with the evidence in the record.   *Se Hamlin*,

365 F.3d at 1215.   While the ALJ concluded that there were no clinical signs or findings to

support Dr. Arizaga's opinions, the ALJ failed to specifically cite to other evidence in the record

with which the opinions conflict.   Defendant attempts to supply the missing evidence that

conflicts with Dr. Arizaga's opinions (*see Doc. 21* at 7-9, stating that the opinions of Drs. Rehman,

Snyder, and Robinson do not support Dr. Arizaga's opinions); however this is an impermissible

*post hoc* rationalization.   *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)

(explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the

reasons stated in the decision," and that it would be improper for a reviewing court or the

Commissioner to "supply[] possible reasons for giving less weight to or rejecting the treating physician's opinion" after the    fact) (citation omitted).   While the ALJ provided a brief summary of Plaintiff's medical history (*see Doc. 10-3* at 20-21), the ALJ failed to explain why she found that this evidence conflicts with Dr. Arizaga's opinions, and failed to cite the portions of Dr. Arizaga's opinions with which the evidence conflicts.   The ALJ also failed to explain why she found this other evidence more believable than Dr. Arizaga's opinions.

In addition, while the ALJ appears to have considered some of the relevant factors under 20 C.F.R. § 404.1527(c) concluding that Dr. Arizaga's opinions are entitled to "limited weight," the ALJ does not specify what portions of the opinions were given limited weight.   As stated above, Dr. Arizaga provided several opinions regarding Plaintiff's limitations.   *See* [*Doc. 10-11* at 47-50].   The ALJ's conclusory statement that Dr. Arizaga's opinions are entitled to "limited weight," without any explanation of which opinions the ALJ is giving limited weight to and how those opinions are accounted for in the ALJ's RFC determination, fails to satisfy the requirement that the ALJ must adequately explain why a treating physician's opinion is not given deference, even when the opinion is found to not be entitled to controlling weight.   *See* Soc. Sec. Rep. 96-2p, 1996 WL 374188, at *4 (explaining that "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight"); *see also Robinson*, 366 F.3d at 1082 (explaining that an ALJ must give good reasons for the weight assigned to a treating physician's opinion so that a subsequent reviewer can clearly analyze the appropriateness of the weight).   Since the ALJ's RFC determination does not account for most of the limitations found by Dr. Arizaga, it appears that the ALJ rejected the

12

majority of Plaintiff's treating physician's opinions, and this was done without any specific explanation of how the treating physician's opinions were inconsistent with the other medical evidence presented in the record, in violation of the requirements regarding the deference that should be given treating physicians' opinions.  *See Hamlin*, 365 F.3d at 1219 (finding that the ALJ erred in failing "to sufficiently highlight how the treating physician's evaluations were inconsistent with the other medical evidence presented in the record"); and *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.") (citation and internal quotation marks omitted).

The Court also rejects Defendant's statement that the ALJ properly gave Dr. Arizaga's opinion limited weight because Dr. Arizaga's questionnaire "did not appear to be the product of an examination."  [*Doc. 21* at 6].  Again, this reason was not supplied by the ALJ, so it is an impermissible *post hoc* rationalization by Defendant.  *See Robinson*, 366 F.3d at 1084 (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons for giving less weight to or rejecting the treating physician's opinion" after the fact) (citation omitted).  In addition, the case upon which Defendant relies for this contention, *White v. Barnhart*, is distinguishable because, in that case, the *ALJ* "set forth specific and legitimate reasons for discounting the doctor's opinion," not the *Commissioner*, after the fact.  *See* 287 F.3d at 907 (explaining that the ALJ noted the discrepancy

13

between the treating physician's assessment and her contemporaneous examination of the claimant; that the consulting physician performed more specific tests than the treating physician performed; and that the treating physician's examination notes were far less detailed than those of the consulting physician).

For the reasons stated above, the Court concludes that the ALJ failed to comply with the legal requirements of *Pisciotta*, 500 F.3d at 1077, and 20 C.F.R. § 404.1527(d)(2), in considering Plaintiff's treating physician's opinions.  On remand, the ALJ should consider these opinions regarding Plaintiff's limitations in compliance with those legal requirements.

### B.   Plaintiff's Remaining Claim

Plaintiff also contends that the ALJ erred by failing to properly assess Plaintiff's credibility.  [*Doc. 20* at 15-18].   Because the Court has found that this case should be remanded so that the Commissioner can properly consider Plaintiff's treating physician's opinions, Plaintiff's RFC may be amended on remand, so the Court finds that it is unnecessary to reach Plaintiff's remaining claim because it may be affected by the ALJ's findings on remand.  *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 2010 WL 1172610, 371 Fed. Appx. 887, 889 and 892 n.6 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective

complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

With regard to Plaintiff's statement that the Commissioner's decision should be reversed and remanded "solely for calculation and awarding of benefits" (*Doc. 20* at 18), the Court finds that it is not clear from the record in this case that Plaintiff should be found to be disabled, and, therefore entitled to benefits, and additional fact finding consistent with this opinion would be needed before making that determination. *Cf. Dollar v. Bowen*, 821 F.2d 530, 536 (10th Cir. 1987) (holding that reversal was appropriate because additional fact finding would serve no useful purpose where the claimant was disabled as matter of law, had been attempting to obtain benefits for six years, and "further administrative proceedings would only further delay the appropriate determination and award of benefits") (citation and internal quotation marks omitted).

## VI.   Recommended Disposition

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that *Plaintiff's Motion to Reverse or Remand Commissioner's Administrative Decision* (*Doc. 19*) be **GRANTED** as set forth above, and the decision of the Commissioner be **REMANDED** for further proceedings consistent with this opinion.

_Lourdes a. Martinez_
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**